IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

DIRECTV, INC.,                )
                              )
         Plaintiff,           )
                              )          CIVIL ACTION FILE
v.                            )
                              )          NUMBER 3:11-cv-66-TCB
GABOR MILISIC, et al.,        )
                              )
         Defendants.          )

# O R D E R

This case is before the Court on Plaintiff DIRECTV, Inc.'s motion for partial summary judgment against Defendants David Rendon and Jennifer Caicedo [51]. DIRECTV seeks summary judgment against Rendon and Caicedo on its first cause of action (for violations of 47 U.S.C. § 605(a)) and its sixth cause of action (for breach of contract).

Rendon and Caicedo filed an untimely response to DIRECTV's motion without seeking leave of Court to do so. Consequently, their response was stricken [61], and DIRECTV's motion is deemed unopposed pursuant to Local Rule 7.1B.

I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In this case, DIRECTV filed a statement of material facts in accordance with Local Rule 56.1 B.(1), but Caicedo and Rendon failed to timely respond. As a result, DIRECTV's facts are deemed admitted. FED. R. CIV. P. 56(e)(2); LR 56.1 B.(2)a.(2), NDGa.

Although DIRECTV's facts are deemed admitted, "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion." FED. R. CIV. P. 56(e) advisory committee notes (2010 amendments). Instead, the Court must consider DIRECTV's facts and "determine the legal consequences of these facts and permissible inferences from them." *Id.* If the facts show that DIRECTV is entitled to judgment as a matter of law, the Court will grant DIRECTV's motion for partial summary judgment. FED. R. CIV. P. 56(e).

II. Undisputed Facts

DIRECTV is a direct-broadcast satellite-television-service provider. To prevent the unauthorized viewing of its programming, DIRECTV encrypts its satellite signals. Thus, in order to view DIRECTV's

programming, customers must utilize special equipment, including a satellite dish, a receiver/decoder, and an access card. That equipment must be activated by DIRECTV on a valid subscriber account.

DIRECTV utilizes independent contractors known as authorized dealers to sell and install its receiving equipment. Authorized dealers have the ability to create subscriber accounts via a secure, password-protected internet database. Only authorized dealers may access the database.

In January and August of 2010, Caicedo signed two contracts on behalf of All Premium Tech Services ("APTS"), which established APTS as an authorized dealer of DIRECTV products and services. Although Caicedo signed the contracts, Rendon actually ran the business. Rendon had also worked as an authorized dealer for DIRECTV prior to 2010, but was twice terminated for creating bad subscriber accounts. As a result, DIRECTV would not have entered into another authorized-dealer agreement with Rendon.

The two contracts that governed the business relationship between DIRECTV and APTS were known as the independent retailer agreement and the customer referral agreement. Both agreements provide that the rights and liabilities of the parties shall be governed by California law. As

to their substantive terms, both prohibited (1) the sale of DIRECTV services outside the United States,[1] (2) the use of "independent contractors, sub-agents or other parties" to promote or solicit sales of DIRECTV satellite programming, and (3) sharing commissions with third parties. In addition, the independent retailer agreement required that APTS verify the accuracy of any subscriber information submitted to DIRECTV, and prohibited the submission of false information.

Rendon hired several individuals ("techs") to sell DIRECTV products and services and to conduct installations on APTS's behalf, and he shared commissions with those individuals. Rendon relied on his techs to collect subscriber information, which he used to create subscriber accounts on DIRECTV's password-protected internet database. However, he did not verify the subscriber information before submitting it to DIRECTV, and some of it was falsified. Rendon also gave his dealer login information to a tech named Jose Cortez, who used that information to create falsified subscriber accounts. In total, thirty-eight falsified subscriber accounts were created using APTS's dealer identification number and password, and those accounts were then used to activate 368 decoding devices, which allowed

---

[1] Although DIRECTV's satellite signal can be received in areas outside the United States, DIRECTV is licensed to broadcast and sell its programming only within the United States.

4

third parties to receive DIRECTV's television satellite transmissions without authorization from DIRECTV.

Initially unaware that the subscriber information was falsified, DIRECTV paid commissions to APTS for the aforementioned thirty-eight accounts.  However, DIRECTV did not receive subscription fees for those accounts, and it has been unable to recover most of the receivers activated on those accounts.  On December 9, 2010, after uncovering this fraud, DIRECTV terminated APTS as an authorized dealer.

III.  Discussion

A.  47 U.S.C. § 605(a)

DIRECTV seeks summary judgment on the issue of Rendon's and Caicedo's liability under the Communications Act, 47 U.S.C. § 605(a).  It seeks to reserve the issue of damages for trial.

"Section 605(a) prohibits the unauthorized receipt, assistance in receiving, or further transmission of radio communications for benefit by a person . . . or that of another unentitled individual or entity."  *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F. 2d 829, 847 (11th Cir. 1990).  The term "radio communications" includes television transmissions.  *Id.*  Thus, "section 605 readily applies to proscribe

[decoding devices] which enable third parties to receive television satellite transmissions intended for paying subscribers." *Id.* at 848.

In this case, it is undisputed that APTS's login information was used to create thirty-eight falsified subscriber accounts and that those accounts were used to activate 368 decoding devices that enabled third parties to receive DIRECTV's television satellite transmissions without authorization. Therefore, it is undisputed that violations of the Communications Act were committed through APTS. However, Rendon and Caicedo have attempted to shift the blame for at least some of those violations to Jose Cortez, who created some of the falsified subscriber accounts after obtaining APTS's login information from Rendon.

In its motion, DIRECTV contends that Cortez was an employee of APTS and that Rendon and Caicedo are therefore vicariously liable for his violations of the Communications Act. But "[b]ecause § 605 expressly prohibits assisting third parties in receiving communications to which they are not entitled," there is "no need to introduce concepts of vicarious liability into § 605 actions." *ON/TV of Chi. v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985) (citation and internal quotation marks omitted). Rendon assisted Cortez in creating the falsified subscriber accounts by giving Cortez

APTS's login information.  Caicedo also assisted in creating the accounts by setting up APTS as an authorized dealer, something Rendon could not have done on his own because of his negative record as an authorized dealer.  Consequently, both Rendon and Caicedo are directly liable for violations of the Communications Act.

It is also important to note that there is no good-faith defense to liability under the Communications Act.[2]  *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1004-05 (2d Cir. 1993).  Therefore, Rendon and Caicedo are liable for assisting the unauthorized receipt of DIRECTV's television satellite transmissions even if they did so inadvertently.  Having determined that they are liable, the Court will now turn to the number of violations they committed.

In this context, "a violation might be thought to occur every time a person 'receive[s]' TV images transmitted by radio waves and 'use[s]' such images 'for his own benefit' by enjoying a telecast."  *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002) (quoting 47 U.S.C. § 605(a)).  But such an interpretation of § 605(a) could lead to an absurdly

---

[2] However, damages may be reduced if "the violator was not aware and had no reason to believe that his acts constituted a violation," and damages may be enhanced if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C).  DIRECTV does not seek summary judgment on whether Rendon's or Caicedo's violations were committed knowingly or willfully, and the Court will not address that issue now.

high number of violations based on a single decoding device. This Court agrees with the Second Circuit that "[w]here the alleged violation arises from the use of a descrambling device, . . . a violation occurs each time a device is purchased and installed." *Caruso*, 284 F.3d at 435; *see also DirecTV, Inc. v. Webb*, 545 F.3d 837, 845 (9th Cir. 2008) (the use of a single system to intercept satellite signals constituted a single violation even though it occurred continuously over a period of 1,237 days).

Rendon and Caicedo assisted the activation of 368 decoding devices. Consequently, DIRECTV will be granted summary judgment on the issue of Rendon's and Caicedo's liability for 368 violations of 47 U.S.C. § 605(a).[3] The issue of damages will be reserved for trial.

B. Breach of Contract

DIRECTV also seeks summary judgment against Rendon and Caicedo on its breach-of-contract claim. Pursuant to choice-of-law provisions in the contracts at issue, this claim is governed by California law. Consequently, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance,

---

[3] Rendon and Caicedo are jointly and severally liable for these violations. *See Caruso*, 284 F.3d at 436 ("[S]ection 605 is sensibly construed to create joint and several liability among those found liable for a single award of damages attributable to the purchase and installation of a single descrambler device.")

8

(3) defendant's breach, and (4) the resulting damages to the plaintiff."
*Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

In this case, APTS entered into two contracts with DIRECTV: the independent retailer agreement and the customer referral agreement. DIRECTV fully performed its obligations under those contracts by, *inter alia*, paying commissions to APTS. Therefore, DIRECTV has proved the first two elements of its breach-of-contract claim.

The undisputed facts also establish that APTS breached its contracts with DIRECTV. First, the independent retailer agreement required APTS to verify the accuracy of all subscriber information submitted to DIRECTV and prohibited the submission of false information. However, APTS failed to verify customer information for at least thirty-eight subscriber accounts, resulting in the submission of false information to DIRECTV.

Second, both agreements prohibited (1) the sale of DIRECTV services outside the United States, (2) the use of "independent contractors, sub-agents or other parties" to promote or solicit sales of DIRECTV satellite programming, and (3) sharing commissions with third parties. Yet APTS hired techs to solicit sales of DIRECTV programming; it shared commissions with its techs; and its techs sold DIRECTV programming

9

outside the United States.  The Court need not determine whether APTS's techs were employees or independent contractors, because either way APTS breached its contractual obligations.  If the techs were employees, APTS breached its contracts by allowing its employees to sell DIRECTV programming outside the United States.  And if they were independent contractors, APTS breached its contracts by using independent contractors to solicit sales of DIRECTV programming and by sharing commissions with third parties.

As a result of APTS's breaches of both contracts, DIRECTV suffered damages in several ways: it paid APTS commissions for falsified accounts, it has not recovered most of the receivers activated on those accounts, and it has not been compensated for the programming viewed on those accounts.  Therefore, the damages element of DIRECTV's breach-of-contract claim is also satisfied.

Although DIRECTV has proved all four elements of a breach-of-contract claim against APTS, it does not seek to recover against APTS but rather against Rendon and Caicedo personally.  This is proper because APTS was a sole proprietorship.  *See Bush v. Bush*, 336 S.W.3d 722, 740 (Tex. App. 2010) ("A sole proprietorship does not have a separate legal

existence distinct from the operator of the business.").[4]  Caicedo contracted with DIRECTV as its owner and sole proprietor; therefore, she is personally liable for its breaches of contract.  *See id.* ("The assets and liabilities of the sole proprietorship belong to the operator directly.").  However, Rendon did not sign either the independent retailer agreement or the customer referral agreement, and although he ran APTS, DIRECTV has not shown that he was anything more than an employee.  Therefore, DIRECTV will be granted summary judgment against Caicedo, but not Rendon.

IV.   Conclusion

Plaintiff DIRECTV, Inc.'s motion for partial summary judgment against Defendants David Rendon and Jennifer Caicedo [51] is GRANTED IN PART AND DENIED IN PART.  DIRECTV's motion for summary judgment on the issue of Rendon's and Caicedo's liability for violations of 47 U.S.C. § 605(a) is GRANTED, and the Court hereby finds Rendon and Caicedo liable for 368 such violations, with the amount of damages to be determined at trial.  DIRECTV's motion for summary judgment on the issue of Caicedo's liability for breach of contract is GRANTED, with the amount of damages to be determined at trial.  DIRECTV's motion for

---

[4] The Court relies on Texas law because APTS's principal place of business was in Texas.

summary judgment on the issue of Rendon's liability for breach of contract is DENIED.  The proposed consolidated pretrial order is due thirty days after the date of this order pursuant to Local Rule 16.4.

IT IS SO ORDERED this 3rd day of December, 2012.

_____
Timothy C. Batten, Sr.
United States District Judge